IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00148-MR
CRIMINAL CASE NO. 2:00-cr-00086-MR

ANA ROSE FERNANDEZ, a/k/a )
ANNA ROSE MOORE, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Petitioner, )
　　　　　　　　　　　　　　　　　　　　)
　　vs. ) **MEMORANDUM OF**
　　　　　　　　　　　　　　　　　　　　) **DECISION AND ORDER**
UNITED STATES OF AMERICA, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Respondent. )
_____ )

**THIS MATTER** is before the Court on the Petitioner's Petition for Writ of Error *Coram Nobis* [CV Doc. 1].[1]

I.　　**BACKGROUND**

The Petitioner Anna Rose Moore (the "Petitioner") legally entered the United States in 1977 and was granted legal permanent resident status in 1984. [EDNC CR Doc. 47 at 8, WDNC CR Doc. 38 at 2]. On November 6, 2000, the Petitioner was indicted in this District on one count of conspiring to

---

[1] Citations to the record herein contain the relevant document number referenced preceded either by the letters "CV" denoting that the document is listed on the docket in Civil Case No. 1:19-cv-00148, the letters "EDNC CR" denoting that the document is listed on the docket in Criminal Case No. 7:18-cr-00011 (E.D.N.C.), or the letters "WDNC CR" denoting that the document is listed on the docket in Criminal Case No. 2:00-cr-00086.

manufacture less than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D).[2] [WDNC CR Doc. 1]. On January 8, 2001, the Petitioner agreed to plead guilty to the indictment. [WDNC CR Doc. 12].

On January 17, 2001, the Court held a Rule 11 hearing on the Petitioner's guilty plea. [WDNC CR Doc. 14; Doc. 38 at 3]. During that hearing, the Court held a colloquy with the Petitioner about her history of mental health, drug, and alcohol treatment, including stays at a mental hospital five years earlier and an alcohol and drug treatment center fourteen years earlier. [CV Doc. 1-4 at 5-7]. Ultimately, the Court accepted the guilty plea and found that the Petitioner made the plea knowingly and voluntarily. [WDNC Doc. 14; CV Doc. 1-3 at 17].

A probation officer prepared a presentence report ("PSR"). [WDNC CR Doc. 38]. The PSR stated that "[b]ased on the conviction for the instant offense, [the Petitioner] is amenable for deportation." [Id. at ¶ 49].

The Court held a sentencing hearing on July 25, 2001. [CV Doc. 1-6]. At that hearing, the parties stipulated that there was a factual basis to support the guilty plea and that the Court could accept the PSR as evidence

---

[2] Petitioner was indicted under the name Anna Rosa Moore, [WDNC CR Doc. 1], though her true name was apparently Ana Rosa Moore. [WDNC CR Doc 38 at 2, 12]. The inconsistent spelling of Petitioner's first and middle names, with yet a third spelling in her Petition, is unexplained.

2

establishing a factual basis to support the plea. [Id. at 2]. The Court sentenced the Petitioner to two years of probation, including six months of home confinement. [Id. at 12-13]. The Court entered its judgment on August 9, 2001. [WDNC CR Doc. 18].

On December 13, 2001, the United States filed a Petition for Revocation. [WDNC CR Doc. 20]. The Petitioner's probation was revoked based upon her admission to the New Law Violation of obtaining property by false pretenses, [Id. Doc. 30 at 2-3], and she was sentenced to six months imprisonment. [Id. at Doc. 27]. On September 16, 2002, the Petitioner was released to the custody of Immigration and Customs Enforcement. [EDNC CR Doc. 47]. On November 20, 2002, the Petitioner was deported to Honduras based on her conviction. [Id. at ¶ 5].

The Petitioner illegally reentered the United States at some point before July 14, 2014, when she was arrested in Onslow County, North Carolina, for not having an operator's license and failing to maintain lane control. [Id. at 3]. On January 20, 2018, the Petitioner was arrested again in Onslow County for not having an operator's license. [Id. at ¶ 6]. On January 31, 2018, the Petitioner was indicted in the Eastern District of North Carolina and charged with illegal reentry by an aggravated felon in violation of 8 U.S.C. §§ 1326(a) and (b)(2). [Id. at ¶ 1]. The Petitioner pleaded guilty

in November 2018. [Id. at ¶ 2]. On May 1, 2019, the Petitioner was sentenced to time served and a year of supervised release. [EDNC Doc. 65].

On May 7, 2019, the Petitioner filed the present Petition for Writ of Error *Coram Nobis* in this Court. [CV Doc. 1]. In it, the Petitioner argues that her 2001 conviction should be set aside because she received ineffective assistance of counsel in many respects, including having been ill-advised regarding the implications that such a conviction could have on her immigration status. [CV Doc. 1 at 5]. To support her claims, the Petitioner submits an affidavit from her ex-husband, Sean Adams. He was a co-conspirator in that case, even though he was not indicted in this Court. [CV Doc. 1-5, WDNC CR Doc. 38 at 4-5]. Adams states in his affidavit that he is a recovering drug addict who abused the Petitioner during their marriage and forced her to buy hydroponic lights to grow marijuana. [CV Doc. 1-5 at ¶¶ 3, 17, 21, 24, 25]. As of the time of her arrest on the charges brought in this Court, however, Petitioner had divorced Adams and was married to Don Michael Moore, who was also a co-conspirator in that case who was not indicted in this Court. [WDNC CR Doc. 38 at 4-5].

On September 13, 2019, the Government responded to the Petitioner's Petition. [CV Doc. 4]. On October 14, 2019, the Petitioner replied to the

Government's Response. [CV Doc. 7]. Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1651(a), *coram nobis* relief is available only when all other avenues of relief are inadequate and where the defendant is no longer in custody. In re Daniels, 203 F. App'x. 442, 443 (4th Cir. 2006) (unpublished); United States v. Mandel, 862 F.3d 1067, 1075 (4th Cir. 1988). In reviewing a petition for a writ of error *coram nobis*, the Court "must presume that the underlying proceedings were correct, and the burden of showing otherwise rests on the petitioner." Hanan v. United States, 402 F. Supp. 2d 679, 684 (E.D. Va. 2005), aff'd, 213 F. App'x. 197 (4th Cir. 2007). The burden placed on a petitioner who seeks a writ of error *coram nobis* exceeds the burden placed on a petitioner who seeks collateral relief through a habeas petition. Id. This heavier burden is justified in *coram nobis* proceedings, as the government is unlikely to allocate scarce prosecutorial resources to retry a defendant who has completed his sentence and thus will not be resentenced. See id. Indeed, the Supreme Court has stated that "it is difficult to conceive of a situation in a federal criminal case today where a writ of *coram nobis* would be necessary or appropriate." Carlisle v. United

States, 517 U.S. 416, 429 (1996) (internal quotation marks and brackets omitted) (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)).

In discussing relief through a writ of error *coram nobis*, the Fourth Circuit has stated as follows:

> As a remedy of last resort, the writ of error *coram nobis* is granted only where an error is "of the most fundamental character" and there exists no other available remedy. Mandel, 862 F.2d at 1075. The writ is narrowly limited to "'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" United States v. Denedo, 556 U.S. 904, 911 (2009) (quoting United States v. Morgan, 346 U.S. 502, 511 (1954)). Thus, the writ provides relief in cases where the error "rendered the proceeding itself irregular and invalid." United States v. Addonizio, 442 U.S. 178, 186, 99 S. Ct. 2235, 60 L.Ed.2d 805 (1979) (internal quotation marks and citation omitted) (superseded by statute on other grounds). A petitioner seeking this relief must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987).

United States v. Akinsade, 686 F.3d 248, 252 (4th Cir. 2012).

### III. DISCUSSION

#### 1. Availability of *Coram Nobis*

With regard to the first Akinsade factor, a more usual remedy was available because the Petitioner was in custody and could have filed a

6

petition under 28 U.S.C. § 2255. "An applicant need only be 'in custody when the application for habeas corpus is filed.'" United States v. Swaby, 855 F.3d 233, 238-39 (4th Cir. 2017) (quoting Carafas v. LaVallee, 391 U.S. 234, 238 (1968)). A prisoner on supervised release is considered to be 'in custody' for purposes of a §2255 motion." United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999). As such, courts "have consistently barred individuals in custody from seeking a writ of error *coram nobis*." Swaby, 855 F.3d at 239 (citing United States v. Brown, 413 F.2d 878, 879 (9th Cir. 1969); United States v. Johnson, 237 F.3d 751, 755 (6th Cir. 2001); United States v. Barrett, 178 F.3d 34, 54 (1st Cir. 1999); United States v. Brown, 117 F.3d 471, 475 (11th Cir. 1997)).

The Petitioner was serving a one-year term of supervised release when she filed this petition (on which she remains today). [EDNC CR Doc. 65]. Because the Petitioner was considered to be in custody when she filed this *coram nobis* petition, she could have filed a § 2255 petition instead. Swaby, 855 F.3d at 239; Matus-Leva v. United States, 287 F.3d 758, 761 (9th Cir. 2002) (stating that "[b]ecause the more usual remedy of a habeas petition is available, the writ of error *coram nobis* is not.").

Petitioner, however, argues that she must resort to *coram nobis* because the statute of limitations has run on any § 2255 claim. While the

Antiterrorism and Effective Death Penalty Act (the "AEDPA") requires that any § 2255 petition be filed within a one-year statute of limitations period, that requirement is irrelevant for determining whether the alternative remedy of a § 2255 petition is available for the purposes of *coram nobis*. Matus-Leva, 287 F.3d at 761 (holding that "[a] petitioner may not resort to *coram nobis* merely because he has failed to meet the AEDPA's gatekeeping requirements."); Barreto-Barreto v. United States, 551 F.3d 95, 103 (1st Cir. 2008) (same); United States v. Esogbue, 357 F.3d 532, 535 (5th Cir. 2004) (same). "To hold otherwise would circumvent the AEDPA's overall purpose of expediting the presentation of claims in federal court and enable prisoners to bypass the limitations and successive petitions provisions." Matus-Leva, 287 F.3d at 761. As such, although the Petitioner's hypothetical § 2255 petition would be time barred because it is filed outside the statute of limitations period contained in the AEDPA, the remedy of a habeas petition remains technically available to the Plaintiff. Thus, the Petitioner is not entitled to relief through a writ of *coram nobis* here.

  **2. Merits of Petition**

Even if the Petitioner had properly presented her claim for *coram nobis* relief, it fails on the merits. The Petitioner claims that her attorney provided ineffective assistance during her 2001 guilty plea by failing to properly advise

8

her about the immigration consequences of pleading guilty, failing to bring an affirmative defense based on duress, and failing to retain an expert to examine her mental capacity to form the intent necessary to enter the conspiracy. [CV Doc. 1 at 5, 8-9].

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. amend. VI. To show ineffective assistance of counsel, the Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

### a. Failure to Explain Immigration Implications of Guilty Plea

The Petitioner claims that her attorney provided ineffective assistance by failing to properly advise her about the immigration consequences of her guilty plea. [CV Doc. 1 at 9].

The Petitioner pled guilty in 2001. [CV Doc. 1-1]. In 2010, the Supreme Court held that a defense counsel's "failure to advise a client about 'succinct, clear, and explicit' immigration consequences for a conviction is constitutionally deficient performance under the Sixth Amendment." United

9

States v. Swaby, 855 F.3d 233, 240 (4th Cir. 2017) (quoting Padilla v. Kentucky, 559 U.S. 356 (2010)). "The requirement that an attorney must advise a noncitizen client that pleading guilty to a criminal charge may carry a risk of adverse immigration consequences found by the Supreme Court in Padilla v. Kentucky, 559 U.S. 356 (2010)," however "is not retroactive to cases on collateral review." Hrcka v. United States, No. 3:08-CR-225-RJC, 2014 WL 4829014, at *4 (W.D.N.C. Sept. 29, 2014) (Conrad, J.) (citing Chaidez v. United States, 568 U.S. 342, 347 (2013)). As such, the Petitioner's counsel was not deficient for failing to advise the Petitioner in 2001 about the immigration consequences of her guilty plea. United States v. Moreno-Tapia, 848 F.3d 162, 170 (4th Cir. 2017). Because the Petitioner's counsel did not perform deficiently by failing to properly advise her about the immigration consequences of her guilty plea, the Petitioner cannot bring an ineffective assistance of counsel claim on that basis.

### b. Failure to Raise Defense Related to Duress

The Petitioner next claims that her counsel erred by failing to advise her about an affirmative defense based on duress. [CV Doc. 1 at 8].

"[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the

affirmative defense likely would have succeeded at trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also United States v. Mooney, 497 F.3d 397, 401 (4th Cir. 2007). When raising an affirmative defense based on duress, a defendant must show "that [s]he acted under a reasonable fear of an imminent threat of bodily harm and that [s]he had no reasonable choice but to commit the illegal act." United States v. King, 879 F.2d 137, 139 (4th Cir. 1989). Duress, however, "is limited to very narrow circumstances." Id. at 138. As such, "[i]t has long been held, 'if there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defenses will fail.'" Hunter v. United States, No. 3:15-CV-00333-MOC, 2016 WL 483131, at *5 (W.D.N.C. Feb. 5, 2016) (Cogburn, J.) (citing United States v. Bailey, 444 U.S. 394, 410 (1980)).

Here, the Petitioner would not have been able to raise a viable affirmative defense based on duress. The evidence that she has submitted does not specifically detail any threats to which she was subjected or any actions she was forced to take because of those threats. While the affidavit submitted by Sean Adams, the Petitioner's ex-husband, says that during the marriage he "threatened her by the way of mind games[,]" and that he "constantly threatened her when she began wanting to leave[,]" that does not

11

rise to the level of imminence required to support a duress claim.  Further, while the Petitioner's ex-husband sets forth in his affidavit that he "had her buy with her credit card the hydroponics lights," he does not assert that the Petitioner took those actions because of an imminent threat.[3]  Moreover, the evidence fails to show that the Petitioner had no alternative but to violate the law or that she was unable to notify law enforcement during the roughly eight-month-long conspiracy.  United States v. Bo Wei Hua, 207 F. App'x 311, 312 (4th Cir. 2006) (denying a duress defense in part because the defendant could have utilized "the reasonable alternative of reporting the threat to local or federal authorities.").  As such, the Petitioner has not presented evidence to show that there was a reasonable probability that a duress defense would have succeeded at trial.  Accordingly, the Petitioner's ineffective assistance of counsel claim based on her attorney failing to advise her about the possibility of asserting an affirmative defense of duress must be denied.

### c. Failure to Retain an Expert Related to Mental Capacity

The Petitioner claims next that her counsel erred by failing to retain an expert to examine her mental capacity to formulate the intent necessary to

---

[3] Petitioner and Adams divorced on October 12, 1999. [WDNC CR Doc. 38 at 5]. Therefore, they must necessarily have separated prior to October 12, 1998. N.C. Gen. Stat. § 50-6.  The conspiracy for which Petitioner was convicted was alleged to have begun in or around May 1999, many months after Petitioner separated from Adams. [WDNC CR Doc. 1, Doc. 38 at 4].  Therefore, Adams' testimony regarding his actions during their marriage appear to be irrelevant to Petitioner's conviction.

enter the conspiracy. [CV Doc. 1 at 9]. The Petitioner points to her "acute history of mental health issues that may ameliorate the intent required to commit the offense of conspiracy," as evidence that her counsel should have examined her mental capacity to formulate intent. [Id.].

In discussing claims that an attorney failed to investigate possible defenses, the Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" whereas "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. at 691.

The only evidence Petitioner points to in support of this point is that she was treated for a nervous breakdown roughly five years before the

13

conduct at issue here and was treated for alcohol and cocaine abuse roughly fourteen years before. [CV Doc. 1 at 2 (citing CV Doc. 1-4 at 5-7)]. Even if an expert had been retained, it is far from clear that the Petitioner would be considered incapable of forming the necessary intent to enter into the conspiracy based on the record in this case. Until she filed this Petition, the Petitioner never had been found mentally incompetent, never asked her counsel for an expert to evaluate her mental capacity, and never claimed to lack the intent to enter the conspiracy. Further, the Petitioner stated at her Rule 11 hearing that she fully understood the nature of the proceedings and the implications of her guilty plea. [CV Doc. 1-4 at 2-15]. Under those circumstances, there was little reason for the Petitioner's counsel to question the Petitioner's mental capacity to form the necessary intent to enter into the conspiracy at issue. As such, the Petitioner's counsel acted within the objective standard of reasonableness by not retaining an expert to examine the Petitioner's mental capacity. Accordingly, the Petitioner's ineffective assistance of counsel claim based on her attorney's failure to retain an expert must be denied.

### 3. Request for an Evidentiary Hearing

The Petitioner requests an evidentiary hearing on her petition. [CV Doc. 1 at 10]. The Fourth Circuit, however, has held that "[n]o hearing

required" on a *coram nobis* petition "when the record conclusively shows that the petitioner is entitled to no relief." United States v. Wilson, 77 F.3d 472 (4th Cir. 1996) (per curiam) (citing Fontaine v. United States, 411 U.S. 213, 215 (1973)); see also Colon v. United States, No. 1:12-CR-204 (JCC), 2016 WL 7210350, at *1 (E.D. Va. Dec. 12, 2016), aff'd, 708 F. App'x 125 (4th Cir. 2018). Because the record conclusively establishes that the Petitioner is not entitled to relief, the Court will not hold a hearing on this matter.

## IV. CONCLUSION

The Petitioner cannot obtain relief on because she cannot show that other relief was not available. Moreover, even if the Petitioner had properly presented her claim for relief, those claims fail on the merits. Because the record conclusively establishes that the Petitioner is not entitled to relief, the Court will not hold a hearing on this matter.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that the Petitioner's Petition for Writ of Error *Coram Nobis* [CV Doc. 1] is **DENIED**.

**IT IS SO ORDERED.**

Signed: April 14, 2020

Martin Reidinger
United States District Judge